IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| DISTRICT OF COLUMBIA, | : | |
| Plaintiff, | : | Case No.: 1:24-cv-02068 |
| | | Chief Judge James E. Boasberg |
| v. | : | |
| ALL OF THE PARCEL OF LAND IDENTIFIED AS SQUARE 5246, LOT 110, LOCATED IN THE 5700 BLOCK OF EAST CAPITOL STREET, NE IN THE DISTRICT OF COLUMBIA, *et al.*, | : : : | |
| Defendants. | : | |

**DISTRICT OF COLUMBIA'S MOTION TO STRIKE COUNTERCLAIM OF DEFENDANT U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT**

Plaintiff the District of Columbia (the "District") moves to strike Defendant U.S. Department of Housing and Urban Development's ("HUD") interpleader counterclaim pursuant to Fed. R. Civ. P. 12(f) and 71.1. HUD has brought an interpleader counterclaim against the District, asking that the District be required to deposit any just compensation for the taken property into the registry of this Court, essentially mischaracterizing the instant case as an interpleader, rather than the eminent domain condemnation case that it is. HUD's legally insufficient counterclaim should be struck for the following reasons:

  1)  The sole purpose of an answer in an eminent domain proceeding is to contest the right of the government to take the property. No other pleading or motion asserting an additional objection or defense is permitted pursuant to Fed. R. Civ. P. 71.1(e)(3), including HUD's misplaced interpleader counterclaim.

  2)  This condemnation matter is a special proceeding now governed by Fed. R. Civ. P. 71.1 and D.C. Code § 16-1311, *et seq.* concerning deposits of just compensation into the

registry of court. Because Fed. R. Civ. P. 71.1 and D.C. Code § 16-1311, *et seq.* already "provide otherwise" regarding deposits of just compensation into the registry of court, Fed. R. Civ. P. 22 and 28 U.S.C § 1335 do not govern these proceedings. HUD's counterclaim erroneously mischaracterizing this action as one of interpleader under Fed. R. Civ. P. 22 and 28 U.S.C § 1335 should therefore be struck as legally insufficient, redundant, immaterial and impertinent.

Because HUD's interpleader counterclaim is not permitted by the Federal Rules of Civil Procedure, and further is irrelevant and legally insufficient, the District respectfully requests that this Court strike HUD's counterclaim.

August 13, 2024                                        Respectfully submitted,

                                                       BRIAN L. SCHWALB
                                                       Attorney General for the District of Columbia
                                                       DAVID FISHER
                                                       Deputy Attorney General,
                                                       Commercial Division

                                                        /s/
                                                       WILLIAM D. BURK, D.C. Bar # 464349
                                                       Chief, Land Acquisition and Bankruptcy Section


                                                        /s/
                                                       ANDREW A. GLOVER, D.C. Bar #980735
                                                       Assistant Attorney General, District of Columbia
                                                       400 6th St., NW, Suite 9100
                                                       Washington, D.C. 20001
                                                       202-442-9830
                                                       andrew.glover@dc.gov
                                                       Counsel for the District of Columbia

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the District's Motion to Strike was sent this 13th day of August, 2024 to all parties of record.

/s/
Andrew A. Glover

**CERTIFICATE OF DUTY TO CONFER; LOCAL RULE 7(m)**

I hereby certify that on August 12th, 2024, the District's counsel contacted HUD's counsel relating to the relief requested in the Motion to Strike. Opposing counsel did not respond to the District's email.

/s/
Andrew A. Glover

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| DISTRICT OF COLUMBIA, | : | |
| Plaintiff, | : | Case No.: 1:24-cv-02068 |
| | | Chief Judge James E. Boasberg |
| v. | : | |
| ALL OF THE PARCEL OF LAND IDENTIFIED AS SQUARE 5246, LOT 110, LOCATED IN THE 5700 BLOCK OF EAST CAPITOL STREET, NE IN THE DISTRICT OF COLUMBIA, *et al.*, | : : : | |
| Defendants. | : | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE DISTRICT OF COLUMBIA'S MOTION TO STRIKE DEFENDANT U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT'S COUNTERCLAIM**

In support of its Motion to Strike Defendant U.S. Department of Housing and Urban Development's (HUD) Counterclaim, Plaintiff states as follows:

**I.   Factual and procedural background.**

The communities east of the Anacostia River, including the areas along the East Capitol Street corridor, are underserved by retail options, particularly access to healthy food options. The District took the real property located in the 5700 and 5800 blocks of East Capitol Street, NE (the "Property") for the valid public purposes of reducing food insecurity in this underserved neighborhood and providing revitalization in an economically distressed community. The District took the Property for the additional public purposes of the removal of unsafe and unsanitary conditions, reduction of the incidence of crime, and the removal of garbage and other eyesores.

The fee simple interest in the Property was owned by defendant the District of Columbia Housing Authority ("DCHA"). Defendant CG Marketplace, LLC ("CGM") held a 99-year

ground lease on the Property.  CGM is a limited liability company with two members; DC Housing Commercial, LLC, (an affiliate of DCHA), and A&R/THC Marketplace, LLC.  Unable to negotiate to purchase the Property at a price satisfactory to the District, the District filed this eminent domain action pursuant to D.C. Code § 16-1311 and D.C. Act 24-411.  Title to the property vested in the District on June 16, 2022, upon the filing of the declaration of taking and the deposit of estimated just compensation into the registry of the Superior Court, pursuant to D.C. Code § 16-1314(b).  The estimated just compensation remains in the Registry of the Superior Court.

In response to a motion by CGM, District of Columbia Superior Court Judge Maurice Ross, *sua sponte*, ordered the District to add HUD to this action, which the District did.  In response, HUD filed an answer, crossclaims, and interpleader counterclaim.  As discussed below, HUD's interpleader counterclaim is legally insufficient under binding District of Columbia case law.  This pleading must therefore be struck pursuant to Fed. R. Civ. P. 12(f).

**II.  Legal Standard**

Pursuant to Fed. R. Civ. P. Rules 12(f), 12(b)(1) and 71.1(e), the Court should issue an Order striking Defendant HUD's interpleader counterclaim, which is contained in its Answer and Crossclaim/Counterclaim in this case.  Rule 12(f) provides in relevant part, "Upon motion made by a party . . . the Court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  A motion to strike "should be granted where it is clear that the affirmative defense is irrelevant and frivolous and its removal from the case would avoid wasting unnecessary time and money litigating the invalid defense."  *Ass'n of Am. Med. Colleges v. The Princeton Review, Inc.*, 332 F. Supp. 2d 11, 22 (D.D.C. 2004) (citations omitted).

Rule 12(f) is often used as the vehicle by which legally insufficient objections and defenses in condemnation actions are resolved. *See e.g. United States v. 729,773 Acres of Land, More or Less, Situate in Honolulu*, 531 F. Supp. 967 (D. Haw. 1982) (striking defenses in part); *United States v. 187.40 Acres of Land, More or Less, Situate in Huntingdon County, Pa.*, 381 F. Supp. 54 (M.D. Pa. 1974) (striking objections of lack of authority); *United States v. 2.9 Acres of Land, More or Less, in the County of Jefferson, Montana*, 545 F. Supp. 529, 532 (D. Mont. 1982).

Likewise, the D.C. Court of Appeals has affirmed the striking of legally insufficient defenses and counterclaims contained in answers in condemnation proceedings. *See, e.g., Oh v. National Capital Revitalization Corporation*, 7 A.3d 997, 1003-04 (D.C. 2010) (affirming striking all of appellant's affirmative defenses); *Franco v. National Capital Revitalization Corporation*, 930 A.2d 160, 169-70 (D.C. 2007) (affirming striking of seven affirmative defenses ***and five counterclaims*** as "legally insufficient.").

**III.    Argument**

The instant case is an eminent domain condemnation case and not an interpleader case as HUD's counterclaim erroneously mischaracterizes it. As such, this case governed by Rule 71.1 and D.C. Code , not an interpleader case governed by Rule 22. HUD's interpleader counterclaim is not a defense or objection to the taking and is barred by Fed. R. 71.1. Further, the counterclaim is irrelevant because it seeks relief already provided for by law. HUD's interpleader counterclaim is legally insufficient, irrelevant, and should be struck pursuant to Fed. R. Civ. P. 12(f).

> **1)    HUD's interpleader counterclaim should be stricken and/or dismissed because it is procedurally improper.**

Rule 71.1(e) provides that a defendant's answer in an eminent domain proceeding must "state all the defendant's objections and defenses to the taking of the property" and "[n]o other pleading or motion asserting any additional defense or objection shall be allowed." Fed. R. Civ. P. 71.1(e).  Under the streamlined procedure set forth in Rule 71.1, counterclaims are prohibited. *See United States v. 113,445 Rentable Square Feet of Space*, 1989 U.S. Dist. Lexis 7399 at *11 (D.D.C. 1989)[1]; *see also Wash. Metro. Area Transit Auth. v. Precision Small Engines*, 227 F.3d 224, 228 n. 2 (4th Cir. 2000) (counterclaims not permitted in eminent domain proceeding).

There is no mechanism under Rule 71.1 that would allow a Court to grant a defendant in an eminent domain proceeding any affirmative relief sought in a counterclaim, only defenses and objections are permitted.  The Superior Court has routinely so held in District-filed condemnation proceedings.[2]  *See District of Columbia v. 521,025 Square Feet of Land in the District of Columbia, More or Less, et al.*, Super. Ct. Civ. Action No. 05-8505 E(RP) (Order entered Feb. 14, 2006 (Zeldon J.) (concluding that Super. Ct. Civ. R. 71A, now 71.1, does not permit the assertion of counterclaims)); *District of Columbia v. John D. Markey*, Super. Ct. Civ. Action No. 04-6904 (RP) (Order entered Nov. 16, 2005 (Canan J.) (same)); *District of Columbia v. All of the Parcel of Land Identified as Lot 0061 in Square 2849*, D.C. Super. Ct. Civil Action No. 04-3772 (RP) (Order Granting Plaintiff's Motion to Dismiss Defendant Henderson's Counterclaim, entered Oct. 28, 2005 (Rankin J.)); *District of Columbia v. All of the Parcel of Land Identified as Lot 0806 in Square 2892,* D.C. Super. Ct. Civil Action No. 04-7740 (RP)

---

[1] A copy of this decision, which is not reported in the official reporter, is included as **Exhibit 1** attached hereto.
[2] Rule 71(A) of the Superior Court Rules of Civil Procedure is identical in all relevant respects to Rule 71(A) of the Federal Rules of Civil Procedure.  *See* D.C. Super. Ct. Rule 71A(i) comment.

4

(Order, entered May 27, 2005 (Campbell J.) (dismissing counterclaim). In explaining the rationale for restricting pleadings in condemnation proceedings, the Fourth Circuit has opined

> The rather summary procedure of Rule 71A [now 71.1] was not intended to foreclose defenses or to restrict their presentation by owners of condemned property. Whatever defenses and objections are available may be raised by answer. The prohibition of other pleadings clearly had, as its purpose, an early joinder of issue and the elimination of the possibility of extended delay through the presentation of preliminary pleadings with resultant hearings and orders . . . [Rule 71A's] prohibition of any pleading other than an answer is clear and unequivocal.

*Atlantic Seaboard Corp. v. Van Sterkenburg*, 318 F.2d 455, 458 (4th Cir. 1963); *see also United States v. Certain Land Situated in the City of Detroit*, 361 F.3d 305 (6th Cir. 2004) (District Court lacked jurisdiction to hear counterclaims against the United States in condemnation cases); *United States v. Vanisadr Bldg. Joint Venture*, 65 F.3d 374 (4th Cir. 1995) (refusing to allow a party holding a property interest in the taken land to present a contract claim in a condemnation proceeding).

The reasoning applied by Federal Courts applies equally in the present case -- the Court does not have jurisdiction to hear HUD's Counterclaims in the context of this proceeding. HUD's interpleader counterclaim is therefore legally insufficient and should be struck pursuant to Fed. R. Civ. P. 12(f).

**2)    Because HUD's interpleader counterclaim seeks relief already provided by Fed. R. Civ. P. 71.1 and D.C. Code Section 16-1311, *et seq.*, this counterclaim should be struck as redundant, immaterial and impertinent pursuant to Fed. R. Civ. P. 12(f).**

HUD's interpleader counterclaim requests relief that is already provided by condemnation law and is therefore redundant, immaterial and impertinent. The District initiated this action by filing a complaint in condemnation and declaration of taking, and depositing

5

estimated just compensation the registry of the Superior Court on June 16, 2022, pursuant to D.C. Code § 16-1314. Upon following this procedure, title to the Property vested in the District of Columbia, and the right to just compensation therefor vested "in the persons entitled thereto." Section 16-1314(b). At trial to determine the total amount of just compensation to be paid by the District, all parties with an interest in the property "may present evidence on the amount of compensation to be paid and may share in the award." Fed. R. Civ. P. 71.1(e)(3). After trial, or in the event of settlement, the Court makes a final award of compensation and enters judgment for the amount of any deficiency (in the event the final award is higher than the estimated compensation), or overpayment (in the event the final award is lower than the estimated compensation). D.C. Code § 16-1315; Fed. R. Civ. P. 71.1(j).

In sum, this case is an eminent domain condemnation case governed by Fed. R. Civ. P. 71.1 and D.C. Code § 16-1314 and 1315 regarding the handling of deposits into the registry of court. Because HUD's counterclaim seeks relief already provided for by District condemnation law, it is therefore redundant, immaterial and impertinent and should be struck pursuant to Fed. R. Civ. P. 12(f).[3]

## IV.    Conclusion

This case is an eminent domain condemnation case governed by Fed. R. Civ. P. 71.1 and District condemnation statutes and not an interpleader case. First, HUD's interpleader counterclaim is barred by Fed. R. Civ. P. 71.1(e)(3) and caselaw interpreting condemnation pleading procedure. Second, HUD's interpleader counterclaim is irrelevant because it seeks

---

[3] To the extent HUD seeks the transfer of the estimated just compensation from the Superior Court to this Court, its interpleader counterclaim is a legally insufficient method of requesting this relief. If HUD seeks this transfer, the District respectfully suggests that HUD either move the Superior Court to disburse the funds to this Court or, at the conclusion of the matter, ask the Superior Court to disburse the funds in accordance with the final order.

relief, under inapplicable interpleader rule and statute, that is already otherwise provided by District condemnation law and procedure. Accordingly, HUD's interpleader counterclaim is legally insufficient, irrelevant, and should be struck pursuant to Fed. R. Civ. P. 12(f).

August 13, 2024                                     Respectfully submitted,

                                                    BRIAN L. SCHWALB
                                                    Attorney General for the District of Columbia

                                                    DAVID FISHER
                                                    Deputy Attorney General,
                                                    Commercial Division

                                                    __/s/_____
                                                    WILLIAM D. BURK, D.C. Bar # 464349
                                                    Chief, Land Acquisition and Bankruptcy Section


                                                     /s/_____
                                                    ANDREW A. GLOVER, D.C. Bar #980735
                                                    Assistant Attorney General, District of Columbia
                                                    400 6th St., NW, Suite 9100
                                                    Washington, D.C.  20001
                                                    202-442-9830
                                                    andrew.glover@dc.gov
                                                    Counsel for the District of Columbia

# Exhibit 1

### *United States v. 113,445 Rentable Square Feet of Space*

United States District Court for the District of Columbia

June 30, 1989, Decided and Filed

Civil Action No. 88-1476 (RCL)

**Reporter**
1989 U.S. Dist. LEXIS 7399 *

UNITED STATES OF AMERICA, Plaintiff, v. 113,445 Rentable Square Feet of Space, at 1201 E Street, N.W., Washington, D. C., etc., Defendants

**Opinion by:** [*1] LAMBERTH

## Opinion

MEMORANDUM OPINION

*Royce C. Lamberth, United States District Judge*

This condemnation case involves a taking by the General Services Administration (GSA) of a leasehold interest in office space to be used for Internal Revenue Service offices. Defendants [1] object to the taking on four grounds. The government has moved to strike defendants' objections, or in the alternative, for summary judgment. For the reasons stated below, the court will grant the government's motion.

*Judicial review of the government's decision to take property under the fifth amendment is limited.* [*2] *The courts may determine whether the taking is authorized, and whether the taking is "rationally related to a conceivable public purpose."* Hawaii Housing Authority v. Midkiff, 467 U.S. 229, 240 (1984). Defendants challenge both GSA's authority to take the office space, and that, in taking it, GSA acted for a public purpose. These objections are discussed in Parts I and II below. The heart of defendants' argument, however, is that GSA acted arbitrarily, capriciously and in bad faith in condemning the property. For the reasons explained in Part III below, the court declines to apply this standard of review in condemnation cases, and holds that judicial review ertends only to ensuring that a taking is "rationally related to a public purpose.

I. *Authority*

*In condemnation cases, authority to condemn is a threshold issue. In the instant case, GSA has both general authority to condemn property, pursuant to 40 U.S.C. § 490(9)(12) and (h)(1), and specific authority to condemn the property at issue here. See* House Committee on Public Works Resolution of September 23, 1987 (Government Exhibit 1). No further showing is necessary.

Defendants do not challenge GSA's statutory authority [*3] to condemn, but instead argue, in a somewhat convoluted manner, that because GSA acted arbitrarily, capriciously and in bad faith, it acted outside its authority and therefore was not authorized. Variations on this argument pervade three of defendants' four defenses. Thus, in their first defense, defendants assert that GSA condemned the lease, in order to avoid paying holdover damages. [2] *See* Prudential Insurance Co. of America v. United States, 801 F.2d 1295 (Fed. Cir. 1986), cert. denied, 479 U.S. 1086 (1987). This purpose, defendants argue, was in bad faith and not authorized by Congress. The third defense alleges failure to comply with Executive Order

---

[1] Defendants are the Kaempfer Company, J. W. Kaempfer, Jr., Warner Theatre Associates Limited Partnership, and Downtown Associates Limited Partnership and all of its general partners and affiliates. Downtown Associates is the record owner of the property and lessor to GSA. On January 21, 1988, the Kaempfer Company entered into a contract with Downtown Associates to purchase property which includes the office space at issue. Kaempfer assigned its interest under the contract to Warner Theatre Associates in an assignment dated as of April I, 1988. J.W. Kaempfer is the general partner of Warner Theatre Associates.

[2] Defendants also argue that GSA failed to comply with the Public Buildings Act of 1959, in that it did not submit a prospectus and obtain Congressional approval for the extension of the lease as required by 40 U.S.C. 606(a). The court agrees with the government that this argument is factually in error, *see* Government Exhibit 1, and that, at any rate, the defense is waived because it was not raised in the Answer. See F.R.Civ. P 71A(e).

No. 12072 (reprinted as a note to 40 U.S.C.A. § 490), which prescribes certain policies and procedures to be followed by GSA when it acquires space for federal facilities in urban areas. Defendants allege that this Order expressly limits GSA's statutory authority, and that therefore, in failing to comply with the order, GSA acted outside its authority. Finally, in its fourth defense, defendants claim that GSA's actions in deciding to condemn amounted to a gross abuse of discretion and thus were far outside its proper authority. [*4]

None of these assertions conflicts with the government's showing that GSA had authority, lawfully delegated by Congress, to condemn the space at issue here. Rather, these defenses seek review of the manner in which the agency exercised its authority. Defendants are, in effect, arguing that the Administrator abused his discretion, that he has no authority to abuse his discretion, and that therefore he lacked authority for his action. Review for *ultra vires* acts and review for abuse of discretion are distinct, however; defendants' argument would make every review of the first necessarily include review of the second. In a condemnation case, review of authority is a threshold inquiry only.

The first defense, moreover, seeks review of the agency's [*5] motive in condemning the property, while the fourth asks the court to find bad faith in GSA's taking "in the face of less costly and less damaging alternatives." This is precisely the sort of review that was rejected by the Supreme Court in *Berman v. Parker, 348 U.S. 26 (1954)*. In *Berman* the Court stated:

It is not for the courts to oversee the choice of boundary line nor to sit in review on the size of a particular project area. Once the question of the public purpose has been decided, the amount and character of land to be taken for the project and the need for a particular tract to complete the integrated plan rests in the discretion of the legislative branch.

*Id., at 35-36*. Although the *Berman* Court addressed review under the public purpose part of the test, its language was unequivocal. Defendants cannot circumvent the Court's reasoning by bringing their challenge under the authority clause.

With respect to the third defense, GSA's alleged failure to comply with Executive Order No. 12072, the court agrees with the government that this failure, even if proved, is not a defense to a taking. In *United States v. 162.20 Acres of Land. More or Less Etc., 639 [*6] F.2d 299 (5th Cir. 1981)*, cert. denied 454 U.S. 828 (1981), the court rejected defendants' argument that noncompliance with the National Historic Preservation Act (NHPA) was a defense to a taking. The court wrote that

where it has been long established that the role of the district court in DOTA condemnations is limited to a bare consideration of the legal authority to take, and where the courts have been careful to refrain from considering matters of propriety, expediency and policy with regard to the use of the property sought, we conclude that only an express statement by Congress that NHPA noncompliance is a defense to a condemnation itself would be sufficient to achieve that result.

*Id., at 304*; see also United States v. 178.*15 Acres of Land, More or Less, Grayson County Virgina, 543 F.2d 1391 (4th Cir. 1976)* (noncompliance with National Environmental Protection Act (NEPA), *42 U.S.C. § 4332(2)(C)*, not a defense to a taking). Executive Order No. 12072 is analogous to NHPA and NEPA in that all require agencies to take certain steps before condemning property. Like NHPA and NEPA, the Order here contains no suggestion that Congress or the President intended to provide [*7] a defense to a taking, and the court will not imply such a defense in this case. 3

II. *Public Purpose*

As with authority, judicial review of the public purpose asserted for a taking is extremely limited. In *Hawaii Housing Authority, supra*, the Supreme Court, following *Berman,* found that the public use requirement is "coterminous with the scope of a sovereign's police powers." *Id., at 240*. Quoting *Berman,* the Court stated that

---

[3] The Fifth Circuit, while rejecting that noncompliance with NHPA could provide a shield to condemnation, suggested that the condemnee might petition the court separately for judicial review of the agency's compliance. The court does not foreclose the possibility of such an action in the instant case, but notes that in the only two cases decided under Executive Order 12072, the courts upheld the acquisitions selected by GSA and held that great deference is to "be given by the courts to GSA's determination. *See Birmingham Realty Co. v. General Services Administration, 497 F.Supp. 1377, 1387 (N.D.Ala. 1980)*; *Fairplain Development Co. v. Freeman, 512 F.Supp. 201, 204 (N.D. Ill. 1981)*.

[t]he definition (of police power) is essentially [*8] the product of legislative determinations addressed to the purposes of government, purposes neither abstractly nor historically capable of complete definition. Subject to specific constitutional limitation, when the legislature has spoken, the public interest has been declared in terms well-nigh conclusive.

Id., at 239, quoting Berman, supra, at 31. In *Hawaii Housing Authority,* the Court upheld a legislatively ordered transfer of property from private landowners to their lessees, over objections that the taking was for private use. In the instant case, the public purpose of the taking is obvious. It is undisputed that GSA has condemned a leasehold interest to provide office space for federal workers, in an office that federal employees have occupied for twenty-five years. There is no allegation that the taking is for private use, or that it is not within the police power of the state.

In their second defense, however, defendants allege "that the decision to condemn a twenty-month right to occupy was arbitrary and capricious and an abuse of discretion, was made in bad faith and therefore precludes a determination that the taking was for a public purpose." Opposition, [*9] at 23-23. In so arguing, defendants cannot mean that GSA's purpose, to provide office space for federal workers, is arbitrary and capricious. Defendants can be referring only to the decision-making processes employed by GSA and review of these processes is, as explained below, very narrow.

III. *Standard Of Review*

*Although most courts articulate only a two-part test in condemnation actions, a third part often goes unstated. This part involves some review of the means adopted by Congress to achieve the stated public purpose of the taking. As a unanimous Court stated in* Hawaii Housing Authority, supra, "the Court has made clear that it will not substitute its judgment as to what constitutes a public use 'unless the use can be found to be palpably without reasonable foundation' [cite omitted]." The court continued to say that "where the exercise of the eminent domain power is rationally related to a conceivable public purpose, the court has never held a compensated taking to be proscribed by the Public Use Clause." *Id.* From this language, it appears that this third test is that the taking be "rationally related" to the public use asserted. In the instant case, taking office [*10] space is undoubtedly related to the goal of providing office space.

Defendants, however, under the guise of directly challenging GSA's authority and purpose, in reality challenge the standard of review provided under this third test. Relying on an earlier Supreme Court opinion, United States v. Carmack, 329 U.S. 230 (1946), defendants argue for review under an arbitrary, capricious, or bad faith standard. This standard, expressed as dicta in , has been cited by a number of lower courts, although none have applied it. Thus, in Southern Pacific Land Co. v. United States, 367 F.2d 161 (9th Cir. 1966), cert. denied 386 U.S. 1030 (1967), the Court explained that, based on Berman, supra, a substantial argument could be made for the position that "when a taking as a whole is for an authorized public purpose the administrative agency's decision as to the necessity for taking particular property or a particular interest in property is not subject to judicial review." But, the Court continued,

the Supreme Court itself has declined to rule out the possibility of judicial review where the administrative decision to condemn a particular property or property interest is alleged [*11] to be arbitrary, capricious, or in bad faith . . . . Moreover, limited judicial review of administrative exercise of condemning authority may well be required by Section 10 of the Administrative Procedure Act, 5 U.S.C. § 1009.

Southern Pacific, at 162. The Court, however, declined to decide whether such review was appropriate, holding that the condemnees had, at any rate, failed to show arbitrary, capricious or bad faith actions. *See, e.g,* United States v. 6.50 Acres of Land, 632 F.Supp. 226 (N.D. Ohio 1986); U.S. v. 2.9 Acres of Land, More or Less, Etc., 554 F.Supp. 529 (D.Mont. 1982); United States v 45,149.58 Acres of Land, More or Less, in Dare County, North Carolina, 455 F.Supp. 192 (E.D.N.C. 1978); United States v. 18.2 Acres of Land, More or Less, in the County of Butte, California, 442 F.Supp. 800 (E.D. Cal. 1977); United States v. 113.81 Acres of Land, More or Less, in Stanislau County, California, 24 F.R.D. 368 (N.D. Cal. 1959).

In the instant case, the court will not conclude, without granting defendants the discovery which they seek, that the actions of GSA were not arbitrary, capricious or in bad faith. The court, however, believes that, in condemnation [*12] cases, the lesser "rationally related" test of *Hawaii Housing Authority,* rather than the arbitrary and capricious language of *Carmack,* applies. The court recognizes that *Berman* and *Hawaii Housing*

*Authority* involve direct exercises of the legislature's condemnation power, while *Carmack* and cases following it involve agency actions. Despite this distinction, however, the court declines to graft APA-style review onto the simple and straight-forward condemnation proceeding. Rule 71A outlines a streamlined procedure for condemnation, from which even counterclaims are prohibited. *See* Fed. R. Civ. P. 71A(e); *United States v. 3,317.*39 *Acres of Land, 443 F.2d 104 (8th Cir. 1971)*, *cert. denied, 404 U.S. 1025 (1972)*. Review under the arbitrary and capricious standard would greatly complicate and lengthen these actions by opening the door to discovery and extensive factual review. [4]

In addition, the court does not find that a higher standard [*13] of judicial review is compelled simply because the taking was done by an agency. Congress retains and exercises strict oversight of GSA's leasing and condemnation activities. *Berman* and *Hawaii Housing Authority* dictate a policy of judicial deference to the legislature's exercise of its eminent domain power, which includes deference to Congress' ability to oversee and supervise its delegation of that power. In conclusion, the court finds that the taking was authorized and that it was "rationally related to a conceivable public purpose." Hawaii Housing Authority, at 240. Further review is not permissible in this action.

Summary judgment will be granted for the government and the defenses will be stricken from the answer.

DATE: June 30, 1989

---

**End of Document**

[4] Some courts have suggested that review of an agency taking may be available as a separate action under the APA. *See* Southern Pacific, *supra*; *U.S. v. 162.*20 Acres, Etc, supra. That question is not presented here.