UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**DISTRICT OF COLUMBIA,**

Plaintiff,

v.

**CG MARKETPLACE, LLC, *et al.*,**

Defendants.

Civil Action No. 24-2068 (JEB)

**MEMORANDUM OPINION**

    The District of Columbia has brought this action against several entities and individuals associated with a tract of land in Southeast Washington. The District seeks to exercise its eminent-domain authority by taking the property in order to facilitate its development. In 2022, to effectuate the taking, it filed a condemnation action in D.C. Superior Court. After several twists and turns, that action has landed in this Court. The United States, which was joined as a defendant as a result of its declared interest in the condemned land, now renounces that interest and asks to be dismissed from the suit. For its part, the District seeks to confirm the validity of the taking, while the property's tenant, CG Marketplace, LLC, requests the dismissal of this action in its entirety. The Court will dismiss the United States and, because that dismissal divests it of jurisdiction, will remand the case to the Superior Court without reaching the merits of the parties' claims.

**I.  Background**

    This dispute revolves around 12 acres of undeveloped land located east of the Anacostia River here in Washington. See ECF No. 35 (Mot. to Confirm) at 1. Before the relevant events took place, the District of Columbia owned the property in fee simple. See ECF No. 31-1 (Mot.

1

to Dismiss) at 2.  In 2012, it granted Defendant CG Marketplace a 99-year lease to develop the land.  Id.  The District charged CG Marketplace $1 per year in exchange for the company's agreeing to "build[] affordable housing, retail, and a restaurant."  Mot. to Confirm at 2.  In 2022 — as development had still not commenced — the D.C. Council found that, if CG Marketplace's 99-year lease remained intact, the property "could remain undeveloped for a generation, exacerbating the inequitable lack of retail options for residents of this part of the District of Columbia."  D.C. Act 24-367 (Mar. 28, 2022), § 2(4), https://perma.cc/C44R-3HY9.  In contrast, it concluded that the parcel's development would "further many important public purposes" by "remov[ing] unsafe and unsanitary conditions, reduc[ing] the incidence of crime," "remov[ing] garbage and other eyesores," "expand[ing] economic opportunities," and "reducing food insecurity in an underserved neighborhood."  Id., § 2(5)–(7).  Because development was "highly unlikely . . . absent the involvement of the District government and without the Mayor's authority to exercise eminent domain," id., § 2(8), the Council so authorized the Mayor to act.  Id., § 3; see also D.C. Act 24-458 (July 6, 2022), https://perma.cc/8W3D-JYAE (authorizing same on permanent basis).

       The city attempted to purchase the property pursuant to D.C. Code § 16-1311 (which governs the procedures for an exercise of eminent domain) but was "unable to acquire [it] at a price satisfactory to the District."  ECF No. 1-1 (Am. Compl.) at ECF p. 5 (Compl. in Condemnation), ¶ 5.  It accordingly filed an action in D.C. Superior Court for the taking of the property.  Id. at 1; see District of Columbia v. All of the Parcel of Land Identified as Square 524, No. 2022-CA-002424-E(RP) (D.C. Super. Ct.).  A defendant in that action, CG Marketplace argued that the federal government held an interest in the land via a grant agreement between the Department of Housing and Urban Development and the city.  It therefore moved to dismiss the

suit on the ground that the District had not joined HUD, which CG Marketplace argued was an indispensable party, as a defendant.  See Motion to Dismiss or, in the Alternative, for Summary Judgment, Square 524, No. 2022-CA-002424-E(RP) (D.C. Super. Ct. Oct. 10, 2023).  The Superior Court then ordered the District to file an amended complaint joining HUD.  See *Sua Sponte* Order, Square 524, No. 2022-CA-002424-E(RP) (D.C. Super. Ct. Dec. 12, 2023).  After the city complied, HUD removed the action to this Court under 28 U.S.C. § 1444, which allows the federal government to remove lawsuits to federal courts when it is the defendant in an action affecting "property on which the United States has or claims a mortgage or other lien."  28 U.S.C. § 2410(a); see ECF No. 1 (Notice of Removal).

HUD has since filed three Answers opposing the District's condemnation on the ground that the taking "would extinguish HUD's extensive legal interests and investment in the" land.  See ECF No. 30 (2d Am. Answer) at 2; see also ECF Nos. 9 (Answer); 18 (1st Am. Answer).  It noted that, under a grant agreement with the D.C. Housing Authority, it has awarded the city funding for development activities.  See 2d Am. Answer, ¶¶ 13–15.  The agency further explained that it formerly possessed a Declaration of Trust that named HUD as a beneficiary of the property at issue, see 1st Am. Answer, ¶ 15, which it released in order to facilitate development when the District leased the land to CG Marketplace.  See id., ¶¶ 16–17; 2d Am. Answer, ¶ 20.  HUD has contended that if its Declaration of Trust was released, such release was improper and the Court should restore it in equity.  See 2d Am. Answer, ¶¶ 25–34; ECF No. 42 (U.S. Opp. to MTD) at 3–4.

Between the filings of the First and Second Amended Answers, the United States substituted itself for HUD on the ground that the agency has sovereign immunity from condemnation actions, while the United States — under 28 U.S.C. § 2410 — does not.  See ECF

3

No. 20 (Mot. to Substitute); Minute Order of Aug. 28, 2024.  CG Marketplace then moved to dismiss the lawsuit for failing to join HUD, which it deemed an indispensable party in light of its interest in the property at issue.  See Mot. to Dismiss at 1.  Because HUD was a necessary party but could not be joined given its immunity, CG Marketplace argued, the case could not go forward.  In response, the District of Columbia filed a combined Opposition to the Motion to Dismiss and Motion to Confirm the Validity of the Taking.  See Mot. to Confirm.

Several months after those Motions were filed, the United States abruptly reversed course in June 2025 while briefing was still ongoing.  It submitted a Notice "disclaim[ing] any and all (i) right, title, claim, or interest in the subject property . . . ; (ii) opposition to, and interest in contesting, the taking; and (iii) interest in being awarded just compensation resulting from the taking." ECF No. 40 (Notice of Disclaimer).  It declared that it now "takes no position on any subsequent transaction concerning the use of the described real property." Id.  As a result, the United States requests its own dismissal on the ground that it has been unnecessarily joined.  See U.S. Opp. to MTD at 2.  With the parties' positions now established, the Court may proceed.

**II.     Legal Standard**

"The power to take private property for public uses, generally termed the right of eminent domain, belongs to every independent government." United States v. Jones, 109 U.S. 513, 518 (1883).  A legal action brought by a sovereign using its eminent-domain authority is commonly referred to as a condemnation proceeding. United States v. Clarke, 445 U.S. 253, 255 (1980).  In Washington, the Mayor can initiate such proceedings "[w]hen real property in the District of Columbia is needed . . . for . . . any . . . authorized municipal use, and that property cannot be acquired by purchase from the owners thereof at a price satisfactory to the officers of the District authorized to negotiate for the property." D.C. Code § 16-1311.  Federal Rule of Civil Procedure

4

71.1 sets out the procedures that must be followed in condemnation proceedings. See also D.C. Super. Ct. R. Civ. P. 71.1 (local equivalent).

### III. Analysis

The Court first discusses the United States's disclaimer of interest and determines that the federal government must be dismissed from this action. Because that dismissal divests the Court of subject-matter jurisdiction, it does not reach the District of Columbia's Motion to Confirm the Validity of the Taking or CG Marketplace's Motion to Dismiss.

#### A. Dismissal of United States

As discussed above, the federal government has now disclaimed any interest whatsoever in the subject property or the District's taking. See Notice of Disclaimer. The United States's current stance represents — as CG Marketplace points out, see ECF No. 44 (Reply in Support of MTD) at 1 — a somewhat surprising about-face from its years-long litigating position that it possesses "extensive legal interests" in the property at issue. See 2d Am. Answer at 2. CG Marketplace accordingly insists that the United States's "say-so alone is insufficient to disclaim its interests" and that the Court must instead "evaluate whether HUD has validly disclaimed its interests, including whether its disclaimer is in good faith." Reply in Support of MTD at 3. To support its argument, CG Marketplace points to a Seventh Circuit opinion in an action to quiet title against the United States, Samuel C. Johnson 1988 Tr. v. Bayfield County, 520 F.3d 822 (7th Cir. 2008). There, the federal government, under the statute governing quiet-title actions, disclaimed having any interest in the property. Id. at 823–24. The court noted in a footnote that "there is some tension in the case law as to whether a district court, prior to confirming the United States's disclaimer, is to ascertain the validity of the United States's justification for issuing the disclaimer, or whether confirmation is a mere formality." Id. at 829 n.5. It further

explained that "[t]here appears to be greater uniformity among the courts . . . that a disclaimer should not be confirmed if the United States is acting in bad faith." Id.

This opinion does not give the Court pause. To begin, the Court doubts that the quiet-title context is, as CG Marketplace believes, "analogous" to the condemnation one. See Reply in Support of MTD at 12. Because defendants in eminent-domain actions are entitled to just compensation for the taking of their property, see U.S. Const. amend. V, they have no apparent incentive to sacrifice in bad faith any interests in the condemned property (and thus their right to monetary redress). Defendants in quiet-title actions, on the other hand, are not similarly entitled to compensation and may have strategic motivations to abandon their valid property interests. See W. H. Pugh Coal Co. v. United States, 418 F. Supp. 538, 539 (E.D. Wis. 1976) (describing one such potential motivation as delaying litigation's resolution).

There is accordingly good reason to take condemnation defendants who disclaim their property interests at their word — as courts often do. See, e.g., United States v. 20 Acres of Land, More or Less, Situated in San Bernadino Cnty., 2019 WL 5063121, at *2 (C.D. Cal. Oct. 8, 2019); United States v. 0.905 Acres, More or Less, Situated in Adair Cnty., 2022 WL 2448212, at *1 (E.D. Mo. July 6, 2022); but see United States v. 62.61 Acres of Land, More or Less, in City of Va. Beach, 547 F.2d 818, 821 (4th Cir. 1977) (describing disclaimer of interest as "evidence" but not "conclusive of" defendant's or co-defendant's ownership of property). Indeed, a treatise setting out templates for pleadings in eminent-domain actions includes an abbreviated form for disclaimers that is similar to the one submitted by the United States in this case. Compare 9A Am. Jur. Pl. & Pr. Forms Eminent Domain § 243, with Notice of Disclaimer.

In any event, the tepid language of a footnote in an out-of-circuit case does not persuade the Court that it should accept CG Marketplace's invitation to seek out various land records in an

6

effort to ascertain the legitimacy of the United States's disclaimer. See Reply in Support of MTD at 3. Even those courts that have opined on "the validity of the United States's justification for issuing the disclaimer," thus creating "some tension" regarding whether such an evaluation is necessary, Samuel C. Johnson 1988 Tr., 520 F.3d at 829 n.5, have done so perfunctorily and without any indication that they believed they were satisfying an obligation. See, e.g., Donnelly v. United States, 850 F.2d 1313, 1317 (9th Cir. 1988) ("The United States conveyed the disputed homestead property as required under [a statute], and the disclaimer was confirmed by the district court as valid and in good faith.").

The Court, moreover, does not doubt the federal government's good faith here. The United States's prior argument regarding its property interest was that HUD's Declaration of Trust (and status as a beneficiary) was improperly terminated and should thus be restored. See 2d Am. Answer, ¶¶ 25–34. The United States has evidently decided that it no longer wishes to advance this position; by submitting its Notice of Disclaimer, the federal government explicitly waived — that is, "intentional[ly] relinquish[ed] or abandon[ed]" — those legal arguments. See United States v. Olano, 507 U.S. 725, 733 (1993) (quotation marks omitted). The Court sees no reason to believe that the United States did so in bad faith nor to suspect that the Government will some day and somehow attempt to assert a property interest that it has already expressly repudiated in federal court. See Comcast Corp. v. FCC, 526 F.3d 763, 769 n.2 (D.C. Cir. 2008) ("We must presume [the government] acts in good faith."). And unlike with arguments that are merely forfeited, which can sometimes be considered, courts "may not review arguments that have been waived." Mo. Dep't of Soc. Servs. v. HHS, 2019 WL 4709685, at *3 (D.D.C. Sept. 26, 2019) (citing Olano, 507 U.S. at 733). The Court thus will not second-guess the United States's disclaimer of interest.

Last, CG Marketplace worries that the United States can have its cake and eat it too by requesting "the same relief that HUD was previously seeking" while renouncing any property interests. See Reply in Support of MTD at 3–4. That concern is unfounded. Although the federal government has expressed an intent to argue "that the interests of justice require" the compensation for the land to be allocated and used in certain ways, it would do so only in the capacity of an *amicus curiae*. See U.S. Opp. to MTD at 7–8 & n.4. The United States could therefore advocate for a certain outcome because of its view of the equities, but it cannot enforce any property rights.

Because the United States does not have an interest in the land at issue, the Court will dismiss it as a defendant. See Fed. R. Civ. P. 71.1(i)(2); D.C. Super. Ct. R. Civ. P. 71.1(i)(2). CG Marketplace circularly asserts that the Court lacks jurisdiction over the United States because of the Government's sovereign immunity and therefore cannot dismiss it from this action. See Reply in Support of MTD at 8–13. CG Marketplace is mistaken. The relevant rule provides that the "court may at any time dismiss a defendant who was unnecessarily or improperly joined." Fed. R. Civ. P. 71.1(i)(2); D.C. Super. Ct. R. Civ. P. 71.1(i)(2) (emphasis added). That authority includes "a party who no longer has an interest in the property to be condemned" because it "ha[s] disclaimed any interest in the subject property and do[es] not oppose dismissal." United States v. 14.368 Acres, More or Less, Situated in Kern Cnty., 2024 WL 2114347, at *1 (E.D. Cal. May 10, 2024). The Court's jurisdiction or lack thereof over the federal government is irrelevant for present purposes. As a result, the Court will dismiss the United States as a party.

### B.   Federal Jurisdiction

The United States is a party only because a Superior Court judge required the District to join HUD as a defendant. HUD then removed this action to this Court under 28 U.S.C. § 1444, which authorizes removal when the federal government is the defendant in a lawsuit, including a condemnation action, affecting "property on which the United States has or claims a mortgage or other lien." 28 U.S.C. § 2410(a); see Notice of Removal. Because the United States is now being dismissed as a defendant after having replaced HUD, however, § 1444 no longer authorizes federal jurisdiction. "[S]tate law normally governs the condemnation of ordinary real property," Hayfield N. R.R Co. v. Chi. & N.W. Transp. Co., 467 U.S. 622, 632 (1984); indeed, the District's Amended Complaint relies exclusively on local statutes. See Compl. in Condemnation at 2, 4. As a result, there does not appear to be a federal claim before this Court. See Caterpillar Inc. v. Williams, 482 U.S. 386, 391–92 (1987) ("[F]ederal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint."). The Court will therefore remand this action to the Superior Court. Compare D.C. Code § 16-1311 (D.C. condemnation actions brought in Superior Court), with id., § 16-1352 (federal condemnation actions brought in federal district court).

## IV.   Conclusion

The Court will dismiss the United States and remand this action to the Superior Court for further proceedings. An Order so stating shall issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date: July 28, 2025

9